THE PEOPLE OF THE STATE OF NEW YORK ex rel. WESSELL, NICKEL & GROSS, Appellant, *v.* CHARLES L. CRAIG, as Comptroller of the City of New York, Respondent.

Tax — New York city — provision of charter authorizing board of taxes and assessments to remit or reduce tax within one year — order of board conclusive and where comptroller refuses to repay amount remitted mandamus will issue — board has jurisdiction not only to reduce but to remit tax — payment after tax becomes lien not voluntary.

1. The purpose of the legislature in adopting section 897 of the charter of the city of New York authorizing the board of taxes and assessments to remit or reduce a tax within one year was to give relief to taxpayers who had failed to make their complaint before the grievance day had passed. The order of the board, when made, has the effect of an order of a court and is conclusive evidence that the tax has been illegally collected. Being illegally collected, the money in the hands of the comptroller is retained without right and where he refuses to pay the same on demand, mandamus will properly issue.

2. A contention that the tax commissioners had no power to remit a tax after it had been paid, their power being confined to the reduction of an outstanding assessment, cannot be upheld. Jurisdiction is given not only to reduce the assessment but to remit the tax which becomes a lien at the time stated in the charter (§ 914). Payment made thereafter is not voluntary, at least if made under protest, for the menace of the lien with penalties added for delay has the effect of rendering it compulsory. (*Tripler* v. *Mayor, etc., of N. Y.,* 125 N. Y. 617, 627; 139 N. Y. 1, distinguished.)

3. The final sentence of section 897, added by amendment in 1915 (L. 1915, ch. 592), does not help the respondent's case. It authorizes a refund in cases where there has been some clerical error. If a duty to refund was already laid on the comptroller, the amendment did not take it away.

*People ex rel. Wessell, Nickel & Gross* v. *Craig,* 199 App. Div. 851, reversed.

(Argued April 18, 1923; decided May 29, 1923.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 15, 1922, which reversed an order of Special

Term granting a motion for a peremptory writ of mandamus and denied said motion.

*James M. Vincent* and *Charles C. Sanders* for appellant. The board of taxes of the city of New York has unrestricted power, for a period of one year after the books have been delivered to the receiver of taxes for collection of taxes in said city, to remit any tax if found excessive or erroneous. (*People ex rel. N. Y. Medical College* v. *Campbell,* 93 N. Y. 196; *People ex rel. N. Y. H. & R. Co.* v. *Barker,* 140 N. Y. 437; *People ex rel. Morewood* v. *Cantor,* 195 App. Div. 190.) Mandamus is the proper remedy to enforce the judgment and order of the tax board remitting a tax upon an assessment found excessive or erroneous by said board under section 897 of the Greater New York charter. (*People ex rel. N. Y. Medical College* v. *Campbell,* 93 N. Y. 196; *People ex rel. N. Y. H. & R. Co.* v. *Barker,* 140 N. Y. 437; *People ex rel. Morewood* v. *Cantor,* 195 App. Div. 190; *Youmans* v. *Simons,* 7 Hun, 466; *People ex rel. Eckerson* v. *Board of Education,* 126 App. Div. 414; *People ex rel. Erie R. R. Co.* v. *Supervisors,* 193 N. Y. 127; *Peyser* v. *Mayor, etc.,* 70 N. Y. 497; *People ex rel. Pell* v. *Supervisors,* 65 N. Y. 300; *Osterhoudt* v. *Rigney,* 98 N. Y. 222; *People ex rel. Smith* v. *Clarke,* 174 N. Y. 259.)

*George P. Nicholson, Corporation Counsel* (*William H. King* of counsel), for respondent. A writ of mandamus may not issue to compel the comptroller to make refund of taxes paid where no express statutory authority for such refund exists. (*Matter of Hedges* v. *Craig,* 194 App. Div. 786.) The provisions of section 897 of the New York charter under which the commissioners of taxes and assessments acted herein contain no provision requiring the comptroller to refund taxes paid, and the commissioners had no authority and did not attempt to direct the comptroller to make such a refund. (L.

1901, ch. 466, § 897.)    A clear legal right existed to obtain
by certiorari proceeding relief from the alleged erroneous
assessment and a mandamus should not issue upon implied
statutory authority, especially where it would infringe
upon the duties expressly charged to the comptroller, and
would be contrary to the principles uniformly applied by
the court that the remedy as to excessive assessments is
exclusively by certiorari proceeding and that voluntary
payments may not be recovered.    (*People ex rel. Coch-
rane* v. *Feitner*, 44 App. Div. 239; *U. S. Trust Co.* v.
*Mayor, etc.*, 144 N. Y. 488; *People ex rel. N. Y. & H. R.
R. R. Co.* v. *Tax Board*, 55 App. Div. 544; *Tripler* v.
*Mayor, etc.*, 125 N. Y. 617, 625; *Vanderbeck* v. *City of
Rochester*, 122 N. Y. 285; *Hebron* v. *City of New York*,
78 Misc. Rep. 653.)

CARDOZO, J.    The relator, a domestic manufacturing
and mercantile corporation, is the owner of 457 West
Forty-fifth street, in the city of New York.    On October
1, 1919, the commissioners of taxes entered the assessed
valuation of this property on their books as follows: The
value of the land was fixed at $42,000, and the value of
the land with improvements at $170,000.    Included in the
improvements was an item of manufacturing machinery,
$73,000, which should have been classed as personal prop-
erty, and was, therefore, exempt (*People ex rel. General
Chemical Co.* v. *Cantor*, 105 Misc. Rep. 62; 188 App. Div.
959; 228 N.Y. 506; Tax Law [Cons. Laws, ch. 60], § 219-j).
There was also an item, power plant, $20,000, which was
a building on another lot.    Under the charter of the city
of New York (§ 892), the relator had until November 30,
1919, to make complaint of this assessment, and to ask
the commissioners for a revision.    It let the time go by
without making any move.    The valuation was con-
firmed on February 1, 1920, and on March 26, 1920, the
assessment rolls were delivered to the receiver of taxes.
Relator sued out a writ of certiorari, but the failure to

make previous complaint before the commissioners invalidated the proceeding (*People ex rel. Chambers* v. *Wells*, 110 App. Div. 336), and in May, 1921, it was discontinued by consent. In the meanwhile, the taxes remained a lien upon the property, and the relator accordingly paid them, one-half on July 7, 1920, and the other half on December 1, 1920.

The writ of certiorari having failed, the relator sought a remedy under section 897 of the charter of the city, which reads as follows:

" The board of taxes and assessments is hereby invested with power to remit or reduce where lawful cause therefor is shown. It may remit or reduce if found excessive or erroneous a tax imposed upon real or personal property. It shall require a majority of the commissioners of taxes and assessments to remit or reduce the assessed valuation of personal property, and no tax on personal property shall be remitted, canceled or reduced, except to correct clerical errors, unless the person aggrieved shall satisfy the board of taxes and assessments that illness or absence from the city had prevented the filing of the complaint or making the application to the said board within the time allowed by law for the correction of taxes. Any remission or reduction of taxes upon the real estate of individuals or corporations must be made within one year after the delivery of the books to the receiver of taxes for the collection of such tax. After the expiration of one year from the delivery of the books to the receiver of taxes, the comptroller, with the written approval of the board of taxes and assessments, may correct any erroneous assessment, or tax due to a clerical error, or to an error of description of any parcel of real estate, contained in the annual record of assessed valuations of real estate, and, if the taxes computed on said erroneous assessment have been paid, the comptroller is authorized to refund the difference between the taxes computed on the erroneous and the corrected assessments."

The petition for relief under this section was presented to the commissioners on February 21, 1921. The relator alleged that the assessment was erroneous, stating its reason for that conclusion, and asked that the tax be reduced and remitted. The commissioners referred the petition to the chief deputy, who reported to them that the assessment was excessive to the extent of $93,000. On March 16, 1921, they adopted a resolution for the reduction and remission of the tax, and fixed the sum of $2,576.10 as the amount overpaid. Demand for repayment was made on the comptroller. The demand was refused, and this proceeding for a mandamus followed.

The Appellate Division took the ground that the tax commissioners had no power to remit a tax after it had been paid. Their power was confined, it was thought, to the reduction of an outstanding assessment. We do not share that view. Both the wording and the purpose of the statute suggest another meaning. Jurisdiction is given, not merely to reduce the assessment, but to remit the tax. Jurisdiction to do less would mean in many instances that action would be futile. The tax becomes a lien at the times stated in the charter (§ 914). Payment made thereafter is not voluntary, for the menace of the lien with penalties added for delay (Charter, §§ 916, 1020) has the effect of rendering it compulsory (*People ex rel. Am. Ex. N. Bank* v. *Purdy,* 196 N. Y. 270, 277; *Ætna Ins. Co.* v. *Mayor, etc., of N. Y.,* 153 N. Y. 331, 340; *Tifft* v. *City of Buffalo,* 25 App. Div. 376, 382). The case is not like *Tripler* v. *Mayor, etc., of N. Y.* (125 N. Y. 617, 627; 139 N. Y. 1). There the assessment was void in its entirety, and not merely erroneous in part (125 N. Y. 627). Payment, moreover, was made without protest, and made at a time when the assessment was stale through the inaction and silence of those empowered to enforce it. Here an assessment, valid at least in part, was a cloud on the title, and a cloud of such a nature that it could not be removed except upon certiorari or by the action of the

assessing officers.   Whether a payment is in truth voluntary, *i. e.*, whether it was meant to be made in renunciation of any adverse right, is, in such circumstances, a question of intention.   The relator's continued purpose to challenge the assessment is indicated by the fact that when the payments were made there was pending a certiorari proceeding, which was later discontinued because of technical defects.   The pendency of such a proceeding is at least the equivalent of protest.

The purpose of the legislature in adopting section 897 was plainly to give relief to taxpayers who have failed for some reason to make their complaints before the grievance day has passed.   Within one year the commissioners may reduce and remit.   If the subject-matter of the tax is personal property, the taxpayer is required to show that illness or absence from the city prevented him from making application before the closing of the books. A *court* could not relieve him even though he presented that excuse (*People ex rel. Chambers* v. *Wells, supra*). Where the subject-matter is real estate, the statute does not require that any excuse be presented.   Possibly it ought to do so.   It does not.   All that is then exacted is that relief be granted within a year.   The order, when made, has the effect of an order of a court.   It is the order of a statutory tribunal acting within its statutory jurisdiction.   If the court in certiorari proceedings were to reduce the assessment, the comptroller would be under a duty to repay the excess collected.   The statute so provides (Tax Law, § 296), but the same conclusion would follow if the statute did not exist (*Bank of Commonwealth* v. *Mayor, etc., of N. Y.*, 43 N. Y. 184).   The order of the tax commissioners like the order of a court is conclusive evidence that the tax has been illegally collected (*Mutual Life Ins. Co.* v. *Mayor, etc., of N. Y.*, 144 N. Y. 494; *People ex rel. McCabe* v. *Matthies*, 179 N. Y. 242, 248; *People ex rel. Erie R. R. Co.* v. *Supervisors of Erie Co.*, 193 N. Y. 127, 132).   Being illegally collected, the money

in the hands of the comptroller is retained without right (*Strusburgh* v. *Mayor, etc., of N. Y.,* 87 N. Y. 452, 455).

The final sentence of section 897, added by amendment in 1915, does not help the respondent's case. It applies to cases where there has been some clerical error. Express authority to refund is then given to the comptroller, upon application made to him, with the commissioners' approval. The relator did not proceed under that provision, and does not need to look to it. If a duty to refund was already laid on the comptroller, the amendment did not serve to take it away.

The order of the Appellate Division should be reversed, and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN. CRANE and ANDREWS, JJ., concur.

Order reversed, etc.