Martin M. Frank, J.
Defendants move for summary judgment. In a first cause of action plaintiff seeks a judgment declaring that the city’s business tax does not apply to it. That plaintiff is entitled to such a judgment is conceded for the purpose of this motion. In a second cause of action plaintiff seeks to recover as money had and received all sums paid by it as business tax during the years 1939 to 1953, inclusive. Only the payment of 1939 was made under protest. It is not claimed that any protest was noted, as to any other payment, save as they may have been covered by the initial protest, but it is claimed that all payments were made under duress. Unless plaintiff shows merit as to the fact of duress the second cause of action must fall. Actually there is no dispute as to the facts save as plaintiff contends the duress grows out of some of them. Annual returns were made by plaintiff by which it determined the tax and remitted checks in payment thereof. Thus the payments were made as contended by plaintiff not only under a mistake of law but under fear that failing payment, an assessment would be made, penalties imposed, warrants issued and levies made thereunder with hazards to plaintiff’s financial standing. These contingencies, plaintiff claims, it sought to avoid by making the payments in dispute. More specifically, plaintiff says a warrant would embarrass it with respect to money lending institutions in New York City and their faith in its credit standing. Likewise, levies might be made upon customers and accounts receivable thus endangering the customer relationship. Consequently plaintiff yielded to these fears and paid but, except *191 as to 1939, without an accompanying note of protest. In short, plaintiff’s case is summed up by it in this way: “ we knew of no way to avoid payment of the tax except by risking the city’s proceeding against us and we could not risk that ”.
It is clear, therefore, that duress rests not on anything the City of New York did but on what plaintiff did in fear that defendants might do something to embarrass it in the performance of their duties under the law as they saw it. The statement of plaintiff’s fear would seem to be implausible. Under the claimed duress for but one year it had the prescience to note a protest. When duress multiplied, was it rendered so insensible as to omit all note of protest?
Parenthetically it may be stated that if plaintiff’s position be accepted as sound, every business tax paid since 1938 is under possible claim of like duress even in the absence of any note of protest or of notice to the city that the imposing of a tax is called into question. Plaintiff argues that as to every such payment made the city is completely without stability as to its ultimate retention of those moneys.
The lack of realism in plaintiff’s position is made more manifest in view of what plaintiff could have done to serve itself and dissolve its fear of imposition of embarrassment without lawful basis. As it is now doing, it could have tested the law at any time during the several years in concern and in several ways. Unless, of course, the duress rendered plaintiff completely impervious to legal advice and guidance. Payment could have been made each year under protest, followed by demand for refund, hearing and review pursuant to article 78 of the Civil Practice Act. Or, following assessment, after failure of payment and demand for hearing, again plaintiff could seek a review pursuant to article 78 of the Civil Practice Act, and finally, upon a deficiency assessment, could by action seek a declaratory judgment. In the latter connection the vacuity of plaintiff’s contentions appears patently, for a deficiency assessment was made in relation to the period July 1, 1946, to June 30,1949, after an audit of plaintiff’s books. Plaintiff could have brought an action for declaratory judgment protesting the validity of that assessment. Instead, it signed a consent and waiver and made payment. Here, too, the plaintiff claims duress. Apart from any question of waiver it could have avoided a warrant by action. Instead it avoided a warrant by consent and without protest. The payments even if made under mistake of law were voluntarily made and when tax payments are voluntarily made they are not recoverable. The facts fail com *192 pletely to supply the element of involuntary action. (Title Guar. & Trust Co. v. City of New York, 265 App. Div. 304, affd. 290 N. Y. 910.) That a defense of voluntary payment is still sufficient and proper despite section 112-f of the Civil Practice Act was the holding in Egyptian Lacquer Mfg. Co. v. City of New York (N. Y. L. J., May 20, 1954, p. 7, col. 3, affd. 285 App. Div. 940). Whatever plaintiff may have thought of its immunity as expressed in the papers accompanying its 1939 payment no such thought or reservation was thereafter expressed or communicated, particularly when the deficiency assessment was made and submitted to by means of formal consent and waiver. The continuing duress, therefore, to the extent it is claimed it was made known is presented as a legal fiction by relation back to the original and only protest. Such relation back has no legal ground (Good Humor Corp. v. City of New York, N. Y. L. J., Aug. 10, 1943, p. 281, col. 3, affd. 267 App. Div. 886). There was complete failure after 1939 to call into question the legality of the tax and there is no valid reason why the authority of the city to retain the moneys paid should now be challenged.
In Adrico Realty Corp. v. City of New York (250 N. Y. 29), upon which plaintiff relies, it is stated “ that duress exists when the payment of money becomes necessary to obtain the immediate liberty of person or the possession of property ” (p. 33). In that case, however, the payment in dispute was made under protest. Moreover, it was ruled that no payment was made under a mistake of law but rather as to the facts. Because of the peculiar factual situation there presented the Court of Appeals (pp. 44-45) finally ruled: “ Our conclusion, therefore, is that if the repaving of Thirty-fifth street was caused by the act or neglect of the city, and not by the act of the plaintiff or for the benefit of its property within the meaning of section 391, the assessment was illegal and void. This is a question of fact which must be tried out. The trial judge was wrong in concluding on the plaintiff’s evidence that the assessment was valid. We also hold that if the assessment was void by reason of facts dehors the record, the payment made by the plaintiff to relieve the land of the lien of the assessment and the burden of the penalties was not a voluntary payment and it may be recovered back.” The indication of duress in that case is clearly, therefore, referable to the peculiar facts of that C3/S6.
In Guzy Realty Co., v. City of New York (175 Misc. 1070, 1071-1072, affd. 262 App. Div. 1008) the court stated: “ The rule is well established that a taxpayer may not recover pay *193 ments made by him, unless when the payments were made he called into question the legality of the demand for payment by some kind of protest. (Goldberg v. City of New York, 260 App. Div 61, 63, 64; People ex rel. Wessell, Nickel & Gross v. Craig, 236 N. Y. 100, 104, 105.) In the case last cited Judge Cardozo, writing for the court, distinguished the case of Tripler v. Mayor (125 N. Y. 617; 139 id. 1), by observing that in the Tripler case payment had been made without protest, whereas in the Wessell case (at p. 105), the relator’s continued purpose to challenge the assessment was indicated by the fact that when the payments were made there was pending a certiorari proceeding which was deemed to be at least the equivalent of protest. * * * This conversation is alleged to have occurred early in January, 1935. Thereupon the plaintiff, through Moore-head’s company as agent, paid the monthly installments of these utility taxes for the years 1935, 1936, 1937 and down to July 1, 1938, without any further indication that it continued to question the legality of the tax. Under these circumstances, the municipal authorities had every right to believe that plaintiff acquiesced in the comptroller’s ruling, and had abandoned any contrary view as to the applicability of the taxing statutes which it had theretofore entertained. There was nothing to put the city on notice of the plaintiff’s ‘ continued purpose to challenge ’ the comptroller’s ruling. (See People ex rel. Wessell, Nickel & Gross v. Craig, supra, p. 105.) ”
In Title Guar. & Trust Co. v. City of New York (265 App. Div. 304, 306, affd. 290 N. Y. 910, supra) the court stated:
‘ ‘ Plaintiff urges that the tax payments made without written protest are recoverable because they were made under duress. It asserts that the local laws and the Comptroller’s regulations pursuant thereto constituted duress and coercion; that by the regulations the Comptroller indicated his intent to impose the tax on plaintiff and that a failure to pay would result in penalties, the issuance of a warrant or the filing of a lien against its property. We think that payments so made were not delivered under duress or coercion but were voluntarily made.
‘ ‘ The seven payments made by plaintiff under written protest may be recovered with interest from the respective dates on which such separate amounts were paid by plaintiff to the city at the rate of six per cent per annum to July 1, 1939 (See General Municipal Law, § 3-a; Cons. Laws, ch. 24), and at the rate of four per cent thereafter. (Sloane Estates, Inc. v. City of New York, [175 Misc. 674].) As to all other payments, defendant is entitled to judgment dismissing the complaint,”
*194 In Matter of United Piece Dye Works v. Joseph (282 App. Div. 60), the comptroller’s assessment was annulled and a refund was directed of the taxes paid for the years 1947 and 1948. With respect to the taxes paid for the year 1946, the determination was confirmed, the taxpayer having failed to make proper or timely protest.
Upon the basis of the foregoing, therefore, and since the recovery of the tax paid under protest for the year 1938 is not recoverable as barred by the Statute of Limitations, the defendants are entitled to a dismissal of the complaint. The motion is granted. Settle order.