JOSEPH MAGUIRE, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 23700.)

Third Department, June 25, 1936.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Second Assistant Attorney-General,* of counsel; *John A. Behan, Assistant Attorney-General,* with him on the brief], for the appellant.

*Solon B. Lilienstern* [*Mortimer Kraus* of counsel], for the respondent.

CRAPSER, J. The claimant-respondent on November 18, 1933, made application in writing to the Alcoholic Beverage Control Board for a license to sell liquor at retail to be consumed on the premises at No. 3774 Broadway, New York city. At the time of the filing of his application he was required to pay and did pay to the Alcoholic Beverage Control Board as and for a license fee the

sum of $500.   On December 26, 1933, claimant's application was granted and a license was issued to him.   In the month of November, 1933, the number of applications filed with the New York city alcoholic beverage control board was more than 7,000.   Most of these applications required attention and investigation by that board preliminary to a decision either to accept or reject.   The maximum number of men available for such investigation work was less than thirty.

Chapter 180 of the Laws of 1933 became a law on April 12, 1933, and provided generally for the licensing of places where and persons by whom beer and wines could be sold within the State of New York.   In anticipation of the repeal of the Eighteenth Amendment to the United States Constitution, there was enacted into law chapter 819 of the Laws of 1933, which became a law on August 29, 1933.   That chapter, in so far as material here, provides as follows:

§ 132-a, subd. 2, ¶ (g).   " ' Interim period ' means and includes the period of time, if any, elapsing between the time the repeal of the eighteenth article of amendment to the Constitution of the United States of America is effected and the first day of April, nineteen hundred thirty-four."

§ 132-a, subd. 5, ¶ (e).   " For the privilege of selling liquors at retail to be consumed on the premises where sold, there is assessed a license fee to be paid for each such place where such business is carried on, in the sum of fifteen hundred dollars per year in cities having a population of one million or more."

§ 132-a, subd. 8.   " The term of each license issued under this section shall commence upon the date of its issuance and terminate upon the expiration of the interim period, and the license fee for such term at the rate prescribed by subdivision five of this section shall be paid in advance at the time application for the license is made as provided by this chapter."

The repeal of the Eighteenth Amendment became effective December 6, 1933, and by virtue of the statute heretofore quoted this became the date of the beginning of the interim period.

The award herein has been made to the claimant because it has been found by the court below that the license fee which should have been charged the claimant, computed at the rate of $1,500 per year for the term beginning December 27, 1933, the date of the actual issuance of the license herein, and terminating on April 1, 1934. the term of the first interim period, should have been $393.60, The amount actually paid was $500, which was computed at the rate of $1,500 per year from the beginning of the interim period, December 6, 1933, to April 1, 1934.   The amount of the judgment represents the difference between the two amounts.   The statutes in question contain no provision for a refund of license fees.

The law provided that a license issued should commence on the date of the issuance and terminate at the end of the interim period. Some period of time had to elapse between the time of the application and the date of the issuance of the license; investigation had to be made. Considering the large number of applications and the small number of employees available to make investigations the delay from November 19, 1933, to December 26, 1933, was not unreasonable.

It was apparent to the claimant at the time he made his application that the payment he was required to make would be in excess of his actual license because the license was to commence on the date of issuance. The payment was a voluntary payment and no ecovery can be had.

21 Ruling Case Law, section 165, page 141, reads: " It is a universally recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal."

37 Corpus Juris, 256, says: "As a general rule, and in the absence of statute otherwise, a person who has paid a license fee or tax which is illegal or in excess of the sum which might lawfully be exacted cannot recover back the amount paid or the illegal excess, if the payment was made voluntarily with full knowledge of the facts, although it was made in good faith, through a mistake or in ignorance of the law, unless the recovery is permitted by an agreement entered into at the time the payment was made. The word ' voluntary ' in this connection is not used in its ordinary sense, and if there is no mistake of fact or coercion, a payment may be voluntary, so as not to be recoverable, even though it is made under protest, or under threats or apprehension of civil proceedings to enforce payment." (*Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29, 32.)

In *People* v. *Wilmerding* (136 N. Y. 363, 374) Wilmerding, an auctioneer, paid license fees under protest, and although it was later decided that the law providing for the fees had been previously repealed no recovery was granted, the court deciding that the payments were voluntary and without coercion.

The judgment should be reversed and the claim dismissed, with costs.

HILL, P. J., RHODES, McNAMEE and BLISS, JJ., concur.

Judgment reversed and claim dismissed, with costs.